```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
4CONNECTIONS LLC,                                           :
                                                            :
                              Plaintiff,                    :     **MEMORANDUM AND ORDER**
                                                            :     08-CV-1282 (DLI) (RML)
              -against-                                     :
                                                            :
OPTICAL COMMUNICATIONS GROUP,                               :
INC.,                                                       :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff 4Connections LLC seeks to dismiss four counterclaims brought by defendant Optical Communications Group, Inc. arising out of an alleged breach of a telecommunications services contract for providing fiber-optic cables between sites in New York and New Jersey.[1] According to these counterclaims: (1) plaintiff failed to provide the cables by the agreed-upon date established in the contract; (2) the cables that plaintiff eventually did provide failed to meet the specifications set forth in the contract; (3) plaintiff fraudulently induced defendant into entering the contract; and (4) plaintiff's fraudulent misrepresentations violated the New York Public Service Law. Plaintiff moved to dismiss these counterclaims under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the court holds that the counterclaims for plaintiff's failure to deliver the correct cables and fraudulent inducement survive the motion to dismiss. The remaining counterclaims are dismissed.

---

[1] This action is properly before the court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1391(a).

1

# BACKGROUND

Defendant is a provider of wholesale telecommunications services to telecommunications carriers and other businesses. In order to provide such services, defendant uses inputs such as dark-fiber cables. One of defendant's customers is a company called Level 3. Defendant entered an agreement with Level 3 to provide connectivity between 60 Hudson Street, New York, New York, and 165 Halsey Street, Newark, New Jersey. Under this agreement, if defendant failed to establish this connectivity by a certain date in 2007, Level 3 would have the right to rescind their agreement.

In order to fulfill this obligation to Level 3, defendant contracted with plaintiff to provide two single-mode dark-fiber cables between the two sites. Before entering into the contract, defendant explained that its arrangement with Level 3 depended on plaintiff's timely delivery of the cables. Defendant claims that plaintiff orally promised to provide the cables by April 26, 2007, and the parties memorialized this promise in the 4Connections LLC Service Order Form ("Service Order") as the "Targeted Completion date." (Pl.'s Mem. Ex. A.) The Service Order also sets forth the required specifications for the cables. The Service Order became effective on April 9, 2007.

The parties do not dispute that the Service Order is part of their agreement; however, the parties do dispute whether a separate document, the 4Connections LLC Communications Service Tariff on file with the New Jersey Board of Public Utilities ("Tariff"), is also part of the parties' agreement. The Service Order provides that the transaction shall be "upon terms and conditions set forth in this Service Order and in the Company's tariff ('Tariff') on file with the New Jersey Board of Public Utilities ('BPU')." (*Id.*) The Service Order also explains that the Tariff, along with other documents, "shall constitute the 'Agreement' between the Parties in connection

with the provision by the Company to Customers of the Services." (*Id.*) According to the Service Order, "[t]he terms, conditions and regulations of the . . . Tariff, are specifically incorporated herewith as if set forth in fully [sic] at length herein." (*Id.*)

Under the Tariff, plaintiff may deliver the cables up to 180 days after the Targeted Completion date without penalty. That provision states:

> "the failure to deliver the Service(s) by . . . [the Targeted Completion date] shall not be an Event of Default under this Tariff or a Service Order. . . . [And] if 4Connections fails to deliver the service(s) on or before one hundred eighty (180) days after the Targeted Completion Date(s) set forth in a particular Service Order, Customer shall have the right, in Customer's sole discretion and as its sole and exclusive remedy, to terminate the Service Order in writing . . . ."

(*Id.*) The Tariff also limits consequential damages in the event of a material breach, providing that:

> "[i]n no event will [plaintiff] . . . be liable to [defendant] . . . for: (a) any loss of profit or revenue, or for any indirect, consequential, incidental, punitive or similar or additional damages, whether incurred or suffered as a result of unavailability of service(s) or facilities, performance or non-performance, termination, breach, or other action or inaction under this tariff . . . even if [defendant] advises [plaintiff] of the possibility of the loss or damage . . . except as specifically provided in this section with regard to outage credits."

(*Id.*)

On its face, the Tariff appears to apply only to transactions occurring within New Jersey. It explicitly states that "[t]his tariff applies only for the use of the Company's Service(s) for communications between points in the State of New Jersey . . . ." (*Id.*) The Tariff, however, also contains a provision stating that "in the event that terms and conditions of a Service Order shall be inconsistent with this Tariff, the terms and conditions of the individual case base ("ICB") arrangement set forth in the Service Order will control." (*Id.*) The Service Order provides for "Single Mode Fibers delivered over a Dark Fiber lateral point to point" between "60 Hudson St,

3

New York NY" and "165 Halsey St, Newark NJ." (*Id*.)

According to defendant, prior to entering the agreement, plaintiff misrepresented that it "was duly authorized to provide the services, and that Plaintiff had the ability to actually provide those services." (Def.'s Mem. at 18; *see also* Def.'s Answer and Counterclaims at ¶¶ 74-76.) Defendant also claims that plaintiff's website falsely represented that plaintiff was licensed to provide telecommunications services "nationwide." (Def.'s Mem. at 5.) At the time, plaintiff was not licensed to provide telecommunications services in New York.

Based on these representations, defendant believed that plaintiff would be able to deliver the cables by the Targeted Completion date. Therefore, defendant took on a $123,000 obligation to construct a collocation cabinet to house the cables. Plaintiff did not, however, provide the cables until August 5, 2007, over three months after the Targeted Completion date. Moreover, those cables failed to meet the agreed-upon specifications set forth in the Service Order. When plaintiff failed to deliver on the Targeted Completion date, defendant tried, but was unable to obtain the cables from another provider in time to satisfy its obligations to Level 3. Defendant claims that, as a result, Level 3 rescinded their agreement. Defendant now seeks to recover: (1) $123,000 (the cost of the collocation cabinet); (2) lost profits from Level 3's rescission; (3) the $20,000 it paid to plaintiff for the cables; and (4) loss of goodwill and other business harms.

## DISCUSSION

### I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York*

4

*City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court created a new pleading standard that now requires plaintiff's to "state a claim to relief that is plausible on its face." 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). To be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1964-65 (citations omitted). The Second Circuit interpreted *Twombly* to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis added).

When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, the complaint is deemed to include writings and documents attached to it, referenced in it, or integral to it. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is "integral" to the complaint if "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153 (internal quotation marks omitted). "A plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id*. Plaintiffs are harmed when material outside a complaint is considered on a motion to dismiss as they lack notice that such consideration is occurring. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150,

155 (2d Cir. 2006). Rule 12(d)'s conversion requirement remedies this problem by "deter[ring] trial courts from engaging in fact finding when ruling on a motion to dismiss and ensur[ing] that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." *Id*. Accordingly, when there is actual notice by the opposing party of all the information in the movant's papers, the necessity to convert a motion to dismiss to one for summary judgment is largely dissipated. *Chambers*, 282 F.3d at 153.

## II. Counterclaims

### A. Breach of Contract: Completion Date and Quality of the Cables

This motion raises two contract law issues. First, the parties dispute whether plaintiff's delivery of the cables, on August 5, 2007, constitutes a breach of the agreement, namely, the Target Completion date provision contained in the Service Order. Second, defendant alleges that plaintiff's failure to deliver cables meeting the specifications set forth in the Service Order is a material breach.

#### *1. Incorporation of the Tariff*

The issue of whether plaintiff was obligated to deliver the cables by the Targeted Completion date of April 26, 2007 or six months later, as permitted under the Tariff, boils down to whether the Service Order incorporates the Tariff. To incorporate a document by reference, New York law requires that the document be referenced beyond all reasonable doubt. *Chiacchia v. Nat'l Westminster Bank USA*, 507 N.Y.S.2d 888, 889-90 (2d Dep't 1986) (citation omitted).[2] When a contract clearly identifies a single document, it eliminates all reasonable

---

[2] The court need not resolve whether to apply New York or New Jersey contract law because, as the parties concede, both states employ the same test for incorporation by reference. (*See* Pl.'s

doubt and thus qualifies as an effective incorporation. *See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47 n.8 (2d Cir. 1993). On the other hand, "vague allusions" to general classes of documents are insufficient to incorporate referenced documents. *Id*. A party's failure to read the terms of an incorporated document does not make those terms any less binding. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (citation omitted).

Here, the Service Order specifically references and incorporates the Tariff. The Service Order states that "[t]he terms, conditions and regulations of the [plaintiff's] tariffs, including but not limited to the Tariff [on file with the BPU], are specifically incorporated herewith as if set forth in fully [sic] at length herein." (Pl.'s Mem. Ex. A.) The Service Order also explains that the "terms and conditions" of the Tariff shall govern the transaction, and the Service Order "shall have the meanings set forth in the . . . Tariff." (*Id.*) In light of the Service Order's clear and explicit incorporation of the Tariff, defendant has no excuse for failing to consider the Tariff before entering into the agreement, and that failure "will not excuse the obligation to be bound by its terms . . . ." *PaineWebber Inc.*, 81 F.3d at 1201 (citation omitted).

Defendant urges the court to ignore this explicit incorporation language by citing to a provision of the Tariff stating that "[t]his tariff applies only for the Company's Service(s) for communications between points within the State of New Jersey . . . ." (*Id*.) The Service Order provides for telecommunication services between sites in New York and New Jersey. Based on this alleged conflict between the Tariff and the Service Order, defendant concludes that the Tariff is inapplicable.

The court disagrees. This argument overlooks another provision of the Tariff stating

---

Reply at 3; Def.'s Mem. at 3.)

that "[i]n the event that terms and conditions of a Service Order shall be inconsistent with this Tariff, the terms and conditions of the individual case base ("ICB") arrangement set forth in the Service Order will control." (Pl.'s Mem. Ex. A.) In this instance, the individual term of the Service Order that is inconsistent with the intrastate limitation of the Tariff is the "Service Order Description." This term provides that "Single Mode Fibers [shall be] delivered over a Dark Fiber lateral point to point" from 60 Hudson St. New York, New York to 165 Halsey St. Newark, New Jersey. (*Id.*) When such a conflict exists, the Tariff mandates that the individualized term of the Service Order shall control. Hence, the intrastate limitation of the Tariff does not prevent the Service Order from incorporating the Tariff.

## 2. *Deficient Cables*

Defendant has pled a sufficient counterclaim based on plaintiff's failure to provide cables that met the specifications set forth in the Service Order. The Service Order requires certain testing and certifications standards for the cables to be delivered under the agreement. (Pl.'s Mem. Ex. A.) Defendant alleges that the "[p]laintiff's own test reports demonstrate that the circuits failed to meet the Testing Certifications Standards set forth in [the] Service Order." (Def.'s Answer and Counterclaims at ¶ 52.) Plaintiff does not dispute this counterclaim, and therefore, it survives.

B. Fraudulent Inducement[3]

Defendant claims that plaintiff's misrepresentations about its ability to provide the contracted services induced defendant into entering the agreement. According to defendant, plaintiff "advised Defendant that Plaintiff could in fact provide the dark fiber strands requested by April 26, 2007," and furthermore, plaintiff's website claimed that it could provide these services "nationwide." (Def.'s Mem. at 5.) Defendant alleged that plaintiff was not authorized to provide those services in New York. Plaintiff counters that its alleged inability to operate in New York was not exclusively within its knowledge and, moreover, was publicly available information. Plaintiff argues that, under these circumstances, defendant could not have reasonably relied on plaintiff's alleged misrepresentations. At this juncture, the court cannot say that defendant's reliance on plaintiff's alleged misrepresentations was unreasonable as a matter of law.

"In order to prove fraudulent inducement under New York law, a plaintiff must prove (1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Computerized Radiological Servs. v. Syntex Corp.*,

---

[3] Although defendant styled this counterclaim as one for wrongful inducement, both parties seem to recognize that the substance of the counterclaim sounds in fraudulent inducement. For purposes of completeness, the court notes that defendant would not have a viable wrongful inducement counterclaim because it has not alleged that plaintiff improperly caused it to breach the contract. Wrongful inducement is not alleged to challenge the contract at inception, but is used to show that the *plaintiff's breach* was "wrongfully induced" by the defendant. *Compare*, *Aris Consulting Group, Inc. v. Devonshire Partners*, 554 N.Y.S.2d 890 (1st Dep't 1990) (discussing damages for the "wrongful inducement of a breach of contract"); *with Rivera v. JRJ Land Prop. Corp.*, 812 N.Y.S.2d 63, 65-66 (1st Dep't 2006) (explaining that the plaintiff's fraudulent inducement claim should have been dismissed because he could not show any false statement upon which he relied when he and the defendant executed the contract).

9

786 F.2d 72, 76 (2d Cir. 1986) (citation and internal quotation marks omitted). The plaintiff must prove the fraud by clear and convincing evidence. *Id*. (citation omitted). "New York courts are generally skeptical of claims of reliance asserted by sophisticated businessmen engaged in major transactions [who] enjoy access to critical information but fail to take advantage of that access." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (citations and internal quotation marks omitted). Even sophisticated businessmen, however, may justifiably rely on a representation unless the information it has access to would have alerted them to the untruthfulness of the representations. *Id*. at 181-82.

In this instance, plaintiff has not identified the information that was purportedly available to defendant prior to when the parties entered the contract. Plaintiff merely argues that its "ability to operate in New York was information . . . readily available for inspection and interpretation by the Defendant . . . [, and] this information was, and remains, available to the general public." (Pl.'s Mem. at 15.) Plaintiff has not provided the specific content of such information or explained how the general public can access such information. As such, the court cannot determine whether the information would have placed defendant "on guard" as to plaintiff's misrepresentations or whether the information was indeed "readily available." *Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir. 1994). Hence, the fraudulent inducement counterclaim survives plaintiff's motion to dismiss.

C. <u>Violations of New York Public Service Law</u>

Defendant's counterclaim under the New York Public Service Law fails because that statute does not apply to interstate transactions such as the one here. N.Y. Public Service Law § 90 (Consol. 2008) ("The provisions of this article shall apply to communication by telegraph or telephone between one point and another within the State of New York and to every telegraph

corporation and telephone corporation."). Furthermore, the New York Public Service Commission retains exclusive authority to bring enforcement actions for violations of its rules and regulations. *See* N.Y. Public Service Law § 26 (Consol. 2008); *Purcell v. N.Y. Cent. R.R. Co.*, 268 N.Y. 164, 171 (N.Y. 1935); *see also Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 348 N.Y.S.2d 404, 407 (4th Dep't 1973) (citing *Purcell*, 268 N.Y. 164 (1935)).

## CONCLUSION

For the reasons set forth above, plaintiff's motion to dismiss is granted in part and denied in part. The counterclaim under the New York Public Service Law and the counterclaim for plaintiff's failure to deliver the cables by the Targeted Completion date are dismissed. The remaining counterclaims may proceed.

SO ORDERED

DATED: Brooklyn, New York
March 27, 2009

_____/s/_____
Dora L. Irizarry
United States District Judge